**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**JAMES ALLEN, ET AL.**                                                    **PLAINTIFFS**

**V.**                                                    **CAUSE NO.: 4:08CV120-SA-DAS**

**ED SCHAFER,**
**Secretary of the U.S. Department of Agriculture**                    **DEFENDANT**

<u>**MEMORANDUM OPINION**</u>

This cause comes before the Court on the motion of the Defendant to dismiss this case for

lack of subject matter jurisdiction, or alternatively, to transfer this matter to the United States District

Court for the District of Columbia [10]. Plaintiffs have responded in opposition to the motion, and

the Court, having considered the memoranda and submissions of the parties, along with other

pertinent authorities, concludes that the Motion to Transfer should be GRANTED.

*Factual and Procedural Background*

The Equal Credit Opportunity Act ("ECOA") creates a private right of action against a

creditor who discriminates against any applicant "with respect to any aspect of a credit transaction

. . . on the basis of race, color, religion, national origin, sex or marital status, or age . . . .". 15 U.S.C.

§ 1691(a); <u>see</u> <u>Garcia v. Johanns</u>, 444 F.3d 625, 629 n. 4 (D.C. Cir. 2006). The statute defines the

term "creditor" to include the United States government, <u>see</u> 15 U.S.C. §§ 1691a(e), (f), and thereby

waives the United States' sovereign immunity for claims brought under the ECOA. <u>See</u> <u>Moore v.</u>

<u>USDA</u>, 55 F.3d 991, 994-95 (5th Cir. 1995); <u>Williams v. Conner</u>, 522 F. Supp. 2d 92, 99 (D.D.C.

2007).  Claims under the ECOA must be brought within two years of the date of the alleged

violation. <u>See</u> 15 U.S.C. § 1691e(f).

However, in 1998, Congress enacted Section 741, a retroactive limited waiver of the ECOA's

statute of limitations.   <u>See</u> <u>Garcia</u>, 444 F.3d at 629 n.4.   Section 741 was "a response to a fundamental breakdown in the USDA's system for processing discrimination complaints." <u>Benoit v. United States Dep't of Agric.</u>, 577 F. Supp. 2d 12, 17 (D.D.C. 2008). The civil rights office of the USDA was essentially "dismantled" in the early 1980s and, as a result, many administrative complaints of discrimination filed with the USDA between 1981 and 1996 "were never processed, investigated or forwarded to the appropriate agencies for conciliation." <u>Pigford v. Glickman</u>, 185 F.R.D. 82, 88 (D.D.C. 1999). The agency's failure to properly process these complaints effectively denied a large number of complainants the right to seek relief under applicable anti-discrimination statutes -- such as the ECOA -- because the limitations periods for those statutes expired while the complainants waited for a response from the USDA. <u>See</u> Administrative Civil Rights Adjudications Under Section 741, 63 Fed. Reg. 67392, 67392 (Dec. 4, 1998) (explaining the genesis of Section 741).

It was under ECOA that four hundred and one African American farmers from Alabama, Arkansas, California, Florida, Georgia, Illinois, Kansas, Missouri, Mississippi, North Carolina, Oklahoma, South Carolina, Tennessee, Texas, and Virginia alleged (1) that the USDA willfully discriminated against them when they applied for various farm programs, and (2) that when they filed complaints of discrimination with the USDA, the USDA failed properly to investigate those complaints. <u>Pigford v. Glickman</u>, 182 F.R.D. 341, 342-43 (D.D.C. 1998) (order on motion for class certification).  Following the passage of Section 741, thereby waiving ECOA's statute of limitations, a Consent Decree was agreed upon and entered by the Court.

The consent decree provided for the creation of a two-track mechanism to resolve the discrimination claims of individual class members. <u>Pigford</u>, 185 F.R.D. at 95-96.   The Decree

further included a provision permitting individuals who did not timely present their claims to nonetheless present their claims if they could demonstrate that they were prevented from making a timely application due to "extraordinary circumstances beyond their control." Id. at 95 n. 5.  Many class members attempted to file claims after the Court-imposed deadline of September 15, 2000, with limited success in proving those "extraordinary circumstances." See Pigford v. Veneman, 173 F. Supp. 2d 38, 39 (D.D.C. 2001) (noting that by 2001, 61,000 late claims had been filed; the arbitrator had reviewed 41,000, and denied 40,000 for failing to meet the "extraordinary circumstances" standard).

Congress subsequently enacted a new cause of action for Pigford claimants who had "not previously obtained a determination on the merits of a Pigford claim."  Pub. L. No. 110-234, § 14012, 122 Stat. 923, 1448-51 (2008).  Congress conditioned the new cause of action on a two-year statute of limitations and a limited amount of funds.  See Pub. L. No. 110-246, §§ 14012(c)(2), (i)(l), (k), 122 Stat. 1651, 2209-12 (2008).

On September 15, 2008, twenty-eight named plaintiffs brought a Pigford claim pursuant to Section 14012(b) of the Food, Conservation and Energy Act of 2008, in the Northern District of Mississippi.  The Defendant thereafter filed a Motion to Dismiss, or in the alternative, to Transfer to Cure the Lack of Subject Matter Jurisdiction.  Defendant contends that this Court lacks subject matter jurisdiction because Section 14012 directs the filing of all Pigford claims in the United States District Court for the District of Columbia.

*Motion to Dismiss Standard*

A motion to dismiss premised on Rule 12(b)(1) attacks the court's jurisdiction to hear and decide any issues in the case.  FED. R. CIV. P. 12(b)(1).  Therefore, the court may address such

3

motion at any time during the pendency of the litigation that is asserted or even upon its own motion. See Williamson v. Tucker, 645 F.2d 404 (5th Cir. 1981). A motion under Federal Rule of Civil Procedure 12(b)(1) should be granted "only if it appears certain that the plaintiffs cannot prove any set of facts in support of their claims that would entitle them to relief." Home Builders Ass'n of Miss., Inc., v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).

It is well settled that on a 12(b)(1) motion the court may go outside the pleadings and consider additional facts, whether contested or not and may even resolve issues of contested facts. Clark v. Tarrant County, 798 F.2d 736, 741 (5th Cir. 1986).  If, however, the court limits its review to the face of the pleadings, the safeguards under Rule 12(b)(6) apply.  If the court considers external matters to the pleadings in deciding a 12(b)(1) motion, the allegations of the complaint need not be taken as true. If the factual matters considered outside the pleadings are undisputed, the court need not make specific factual findings for the record.

*Discussion and Analysis*

Although the Plaintiffs argue that jurisdiction is proper in the Northern District of Mississippi, they acknowledge that the case should be transferred to the United States District Court for the District of Columbia for the convenience of the parties and witnesses.  Because the parties are in agreement that the District Court for the District of Columbia is an appropriate forum for this matter, the Court grants the Motion to Transfer.  However, because the Defendant argues that transfer is proper under 28 U.S.C. § 1631, but Plaintiffs contend that 28 U.S.C. § 1404(a) should be used, this Court must determine whether subject matter jurisdiction is proper in the Northern District

of Mississippi.[1]

Plaintiffs argue that under the ECOA, the Northern District of Mississippi is an appropriate forum for the action based on the general venue statute found at 28 U.S.C. § 1391(e).  However, Defendant contends that Congress specifically limited the appropriate venue to the District Court of the District of Columbia in the statute.

The Court notes that Plaintiffs' case is not brought pursuant to the ECOA.  As noted above, Congress created a new cause of action for Pigford claimants under the Food, Conservation and Energy Act of 2008 because all applicable limitations periods had expired under ECOA.  Plaintiffs specifically allude to Section 14012 in the opening paragraph of their Complaint.  Accordingly, Section 14012(b) states:

> Any Pigford claimant who has not previously obtained a determination on the merits of a Pigford claim may, in a civil action brought in the United States District Court for the District of Columbia, obtain that determination.

Pub. L. No. 110-249, § 14012(b).

Plaintiffs argue that the word "may" modifies "in a civil action brought in the United States District Court for the District of Columbia," such that Section 14012 claims may be brought in that district just as any other district.

In a statutory interpretation case, the beginning point must be the language of the statute, and "when a statute speaks with clarity to an issue, judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." Estate of Cowart v. Nicklos Drilling Co., 505 U.S.

---

[1] 28 U.S.C. Section 1404 provides that a district court may transfer a civil action, for the convenience of parties and witnesses and in the interest of justice, to any other district where the claim might have been brought.  28 U.S.C. Section 1631, entitled Transfer to Cure Want of Jurisdiction, allows the transfer of an action from a court which lacks subject matter jurisdiction to another district where the claim could have been brought.

469, 475, 112 S. Ct. 2589, 120 L. Ed. 2d 379 (1992) (citing Demarest v. Manspeaker, 498 U.S. 184, 190, 111 S. Ct. 599, 112 L. Ed. 2d 608 (1991).

The clear reading of the statute provides that a Pigford claimant who has yet to obtain a determination of the claim may file suit. This is the creation of the new claim. Where that suit must be filed is specifically referred to in that section - - the United States District Court for the District of Columbia. See United States v. Ron Pair Enters., 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989) (noting that where a phrase is set aside by commas, "that phrase stands independent").

Moreover, based on the extensive legal history of these claims, it was clearly Congress' intent to vest the District Court of the District of Columbia with adjudicatory control over these cases. See Pigford v. Vilsack, 613 F. Supp. 2d 78 (D.D.C. 2009); Benoit v. United States Dep't of Agric., 577 F. Supp. 2d 12 (D.D.C. 2008); In re Black Farmers Discrimination Litigation, 587 F. Supp. 2d 23 (D.D.C. 2008); Pigford v. Schafer, 536 F. Supp. 2d 1 (D.D.C. 2008); Williams v. Conner, 522 F. Supp. 2d 92 (D.D.C. 2007); Pigford v. Johanns, 421 F. Supp. 2d 130 (D.D.C. 2006); Wise v. Glickman, 257 F. Supp. 2d 123 (D.D.C. 2003); Pigford v. Veneman, 173 F. Supp. 2d 38 (D.D.C. 2001); Garcia v. Veneman, 211 F.R.D. 15 (D.D.C. 2002); Pigford v. Glickman, 185 F.R.D. 82 (D.D.C. 1999).

Accordingly, pursuant to 28 U.S.C. § 1631, this case is hereby TRANSFERRED to the United States District Court for the District of Columbia.

SO ORDERED, this the 27th day of July, 2009.

 /s/ Sharion Aycock
U.S. DISTRICT JUDGE